IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HELAL SAFI, | § | |
| *Plaintiff,* | § | 5:26-CV-01462-FB-RBF |
| vs. | § | |
| KRISTI NOEM, TODD M. LYONS, LETICIA DIAZ, WARDEN, SOUTH TEXAS ICE PROCESSING CENTER, | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Petitioner Helal Safi's Amended Petition for Writ of Habeas Corpus. *See* Dkt. No. 11. The District judge referred all pretrial matters for resolution by the Magistrate Judge, pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 8. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, the Amended Petition for Writ of Habeas Corpus, Dkt. No. 11, should be **GRANTED,** and Respondents should be ordered to **RELEASE** Petitioner, subject to the execution of his final order of removal, which Respondents are free to act upon lawfully and pursuant to applicable procedures.

**Factual and Procedural Background**

Petitioner Helal Safi is a citizen of Afghanistan. Dkt. No. 11-1 (Asylum Statement). He provides in his Asylum Statement that he and his family had significant connections to the

national Afghan government prior to the current Taliban regime, which came into power in August of 2021. *Id*. at 1-2. Specifically, Safi states that his uncle was a prominent member of the prior Afghan government, and that Safi worked closely with his uncle as an assistant and advisor while studying at Kabul University. *Id*. at 1. As a result, says Safi, the Taliban repeatedly targeted Safi and his family:

> As the Taliban began regaining power, the situation deteriorated. They issued threats to my father, telling him to quit his job and to stop his sons from working for the government. They warned that failure to obey would result in our kidnapping or death. My father reported the threats to police and to my uncle, but no real protection was offered.

*Id*. at 2. "Eventually," Safi explains, "I myself was detained by the Taliban for 24 hours. They beat me with the magazine of a gun." *Id*. He describes the experience as "terrifying and deeply traumatic." *Id*.

Safi states in his Asylum Statement that he fled Afghanistan on or around August 15, 2021, which was the day the Taliban captured Kabul. *Id*.

Safi avers that he entered the United States on November 19, 2024,[1] after having traveled through Turkey, Iran, Brazil, and several other countries. *Id*. at 2-3. He states that he turned himself over to immigration authorities. *Id*. at 3. He sought asylum due to his persecution by the Taliban in Afghanistan. *Id*.; Dkt. No. 11 at 4. Immigration authorities placed him in expedited removal proceedings, and he was issued a Notice to Appear in immigration court after he expressed a credible fear of removal to Afghanistan. *See* Dkt. No. 12 at 2.

---

[1] There is some discrepancy in the record regarding the precise date that Safi entered the United States. Safi provides in his asylum statement that he entered the country on November 19, 2024. Dkt. No. 11-1 at 3. This is also the same date that the Amended Petition says Safi was taken into custody by immigration authorities, but the Amended Petition pegs the *date of entry* as August 15, 2021, which the Court takes as a mistake because that was the date Safi left Afghanistan. Dkt. No. 11 at 4. Respondents state that he entered the country on November 9, 2024. *See* Dkt. No. 12 at 2; *see also* 12-1 at 1. The Court, for present purposes, uses the date of November 19, 2024, although the precise date does not bear on the outcome of the petition.

On July 31, 2025, an Immigration Judge ("IJ") found Safi removable but granted him a withholding of removal under INA § 241(b)(3). Dkt. No. 12 at 2; *see also* Dkt. No. 9-1 (Removal Order). Neither Safi nor DHS appealed the IJ's ultimate decision, and his order of removal became final. Dkt. No. 12 at 2; Dkt. No. 12-1 at 1; Dkt. No. 11 at 5. Safi's Amended Petition states that the IJ found Safi statutorily ineligible for asylum. Dkt. No. 11 at 4-5. The IJ's Order reflects that Safi's asylum application was withdrawn with prejudice. Dkt. No. 9-1 at 1.

Safi has been in custody since his entry into the United States. Dkt. No. 16-1 at 1 ("Petitioner has remained in immigration detention since his apprehension."). Meaning, at the time of this Report and Recommendation, he has been in custody for over twenty months. On February 24, 2026, Enforcement and Removal Operations ("ERO") officials in San Antonio conducted a panel interview of Safi for his 180-day Post-Order Custody Review ("POCR"). *Id.* at 2. The panel recommended his continued detention, "as he posed a flight risk based on his final order of removal. On or about March 10, 2026, the 180-day POCR memo was sent to Headquarters Removals and International Operations Division . . . where it is currently pending approval." *Id.* "On July 21, 2026, [Safi] was served with his continued detention letter," which informed him that ICE was working with the State Department to secure a third country to which he could be removed consistent with his withholding-of-removal order. *Id.*

Approximately seven months after his final order of removal, Safi, proceeding *pro se*, filed a Petition for Writ of Habeas Corpus on February 27, 2026. Dkt. No. 1 (Petition); Dkt. No. 6 (Response). Several months later, counsel entered an appearance on his behalf. Dkt. No. 7. The case was thereafter referred to the undersigned for the resolution of pretrial matters. Dkt. No. 8. This Court ordered Safi to file an amended petition and directed Respondents to respond to it.

Dkt. No. 10. Currently before the Court is Safi's Amended Petition, Dkt. No. 11, and Respondents' Response, Dkt. No. 12.

The Amended Petition seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *Id*. at 10. It raises a claim under *Zadvydas v. Davis*, 533 U.S. 678 (2001), taking issue with Safi's continued and potentially indefinite detention pending removal. Dkt. No. 11 at 7 (citing *Zadvydas*, 533 U.S at 682). The Amended Petition also alleges substantive and procedural violations of the Fifth Amendment Due Process Clause to the United States Constitution in connection with his continued detention. *Id*. at 10-11.

The Court set this matter for an attorneys-only status conference on July 24, 2026. Dkt. No. 15. The Respondents had no updates other than those provided in a status report filed shortly before the hearing. That status report explained that ICE is continuing to request assistance from the State Department with Safi's third-country removal and that ICE had last requested such an update on July 8, 2026. Dkt. No. 16-1 at 2. It further provides that Safi was served with a letter stating that ICE was working with the State Department to effect third-country removal and that "there is no indication that the Department of State will be unable to assist ERO with securing third country removal of [Safi]." *Id*.

**Analysis**

For the reasons provided herein, the Court recommends that Safi's Amended Petition for Writ of Habeas Corpus, Dkt. No. 11, be **GRANTED.** Safi has been detained beyond the presumptively reasonable period under *Zadvydas*, and there is no significant likelihood of his removal to a third country in the reasonably foreseeable future.

**A. The Court Has Jurisdiction to Address a *Zadvydas* Claim.**

Although Respondents don't appear to contest the Court's jurisdiction to address a claim invoking *Zadvydas*, the Court addresses the topic *sua sponte*, as it must. Although the INA curtails the jurisdiction of federal district courts, it does not bar federal district courts from considering habeas petitions challenging a petitioner's indefinite detention following the entry of a final order of removal. *See, e.g.*, *Zadvydas*, 533 U.S. at 688. Accordingly, the Court has jurisdiction to address a challenge to the foreseeability of Safi's removal following the entry of a final order of removal in his case. Because the Court ultimately recommends a grant of relief on this claim, there is no need to address jurisdiction over Safi's remaining claims.

**B. Petitioner's Removal is Not Reasonably Foreseeable.**

The limits on detention pending deportation, after an order of removal, are settled. "Once an alien is ordered removed, DHS must physically remove him from the United States within a 90-day 'removal period.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(A)). During the 90-day removal period, detention is mandatory. *See id.* (citing 8 U.S.C. § 1231(a)(2)). "Upon expiration of the removal period, the Government may continue to detain certain aliens or release them under conditions of supervision." *Abuelhawa v. Noem*, 811 F.Supp.3d 847, 855 (S.D. Tex. 2025) (citing 8 U.S.C. § 1231(a)(6)).

The 90-day removal period may be extended to permit prolonged detention in at least three circumstances. *See Trejo v. Warden of ERO El Paso E. Montana*, 807 F.Supp.3d 697, 705 (W.D. Tex. 2025). For example, an alien may be detained beyond the removal period if he is "(1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the

community or unlikely to comply with the removal order." *Guzman Chavez*, 594 U.S. at 529 (citing *inter alia* 8 U.S.C. § 1231(a)(6)).

"[T]he statute does not specify a time limit on how long DHS may detain an alien in the post-removal period." *Id*. But due process demands that the alien not be detained indefinitely. *See Zadvydas*, 533 U.S. at 696-97. Because "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem," the Supreme Court has "read an implicit limitation into the statute," namely, that post-removal detention may not last longer than "reasonably necessary to bring about that alien's removal[.]" *Id.* at 689-90. Recognizing that not all reasonably foreseeable removals can be accomplished within the 90-day removal period, the Court has generally held that such detentions are "presumptively reasonable" for up to "six months." *Id.* at 701. Release is required, however, if after the six-month period the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Guzman Chavez*, 594 U.S. at 529 (quoting *Zadvydas*, 533 U.S. at 701).

**1.** *Petitioner's statutorily prescribed and presumptively reasonable period of detention has expired.* To the extent Federal Respondents contend that Petitioner is presently lawfully detained within the 90-day removal period, the contention fails. By statute, the 90-day removal period, during which detention is mandatory, begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B)(i)-(iii). Per the plain text of this provision, applied to the undisputed facts of this case, the removal period began once Safi became subject to the final order of

removal, issued by the IJ on July 31, 2025. *See* Dkt. No. 11 at 4-5; Dkt. No. 12 at 2; *see also* Dkt. No. 9-1 (Order of Removal). The 90-day removal period thus expired on October 29, 2025.

Accordingly, Safi's post-removal detention is subject to scrutiny under *Zadvydas*. Safi may be detained, *Zadvydas* teaches, no longer than is "reasonably necessary to bring about [his] removal." *Zadvydas*, 533 U.S. at 689. And while post-removal detentions are presumptively reasonable for up to six months, Safi has been detained well past that presumptively reasonable six-month period. *Id*. at 701. If there "is no significant likelihood of removal in the reasonably foreseeable future," Safi must be released. *Guzman Chavez*, 594 U.S. at 529 (quoting *Zadvydas*, 533 U.S. at 701).

**2.** *Petitioner carries his initial burden under* Zadvydas*.* An immigration detainee who brings a *Zadvydas* claim after the presumptively reasonable six-month period has run generally need only "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Zadvydas*, 533 U.S. at 701. And if he does so, "the Government must respond with evidence sufficient to rebut that showing." *Id.*

Safi has provided the Court good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Safi claims in the Amended Petition "that his removal is not reasonably foreseeable" and writes that "[t]he amount of time Petitioner has been in detention and the inability of Respondents to remove him during this time . . . make it reasonably unforeseeable that Respondents will remove Petitioner any time soon from the United States . . . ." Dkt. No. 11 at 5. More to the point, however, are Safi's arguments about Respondents' third-country removal efforts so far. Safi notes that he "cannot be deported to . . . Afghanistan because was granted protection under the [INA] with respect to that country," and that "ICE's half-hearted attempts to remove [Safi] to a random collection of unspecified

alternative countries—to which has no ties, and which have no policy or history of accepting non-citizen deportees—are speculative and futile." *Id*. at 2. Review of the record significantly corroborates Safi's contentions.

Respondents give, at best, vague and barebones assurances about the likelihood of Safi's removal in the reasonably foreseeable future, let alone any meaningful information regarding concrete steps taken towards his removal. Safi cannot be removed to Afghanistan. The State Department has merely "acknowledged receipt of the request [to assist in third-country removal] and advised that it would update ERO with any developments as to third country removal." Dkt. No. 16-1 at 2. Since then, the State Department has provided no updates other than assurances that it "would reach out once there were further updates." *Id*. According to Respondents' declaration in support of their advisory, the most recent of these assurances appears to have been communicated on February 10, 2026. *See* Dkt. No. 16-1 at 2. Respondents provide no information about the State Department's answers to subsequent requests for assistance. *See generally id*. Accordingly, Safi has shown good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.

**3.** *Respondents fail to carry their corresponding burden*. Respondents' bare assertion that "ERO is diligently working on removal to a safe third country along with the Department of State," Dkt. No. 12 at 6, provides no meaningful information about concrete steps taken toward, or plans for, Safi's removal. Such a statement could be made 2 weeks or 2 years after detention pursuant to a final order of removal, and it would provide the same negligible level of insight into the foreseeability of removal. The statement is incapable of informing a conclusion that there is any significant likelihood of removal in the reasonably foreseeable future. *See id*.

Supporting declarations from ICE officials are unhelpful on the issue before the Court. These declarations merely recite the fact that they have asked the State Department for assistance in effectuating third-country removal and explain that the State Department has acknowledged the requests and indicated it will provide updates as they become available. *See* Dkt. Nos. 6-1, 12-1, 16-1. This evidence provides no insight into the timing of Petitioner's removal. And it does not rebut Plaintiff's initial showing.

Respondents' assertion that "[t]he Department of State has not indicated their inability to assist ERO in securing third country removal" misses the mark. Dkt. No. 16 (citing Dkt. No. 16-1 at 2). The question is not whether the State Department *might* assist in removal efforts or even that it is willing to assist in those efforts. The question now—after months and months and months of detention—is one of timing and likelihood of removal in the reasonably foreseeable future. The fact that the State Department has not excluded the possibility of assisting in Safi's removal does nothing to inform *when* removal might occur and whether there is any significant likelihood it could take place in the reasonably foreseeable future. The Respondents' attempts to rebut Safi's showing that there is no significant likelihood of removal in the reasonably foreseeable future are therefore unavailing.

Petitioner is therefore entitled to habeas relief under *Zadvydas* and § 2241. "The Court is mindful that the government has the right to enforce [Petitioners]'s Order of Removal. But the government may not detain [Petitioner] for an indefinite and undetermined period of time while it tries [or doesn't try] to effect that removal when the circumstances are such that his removal is not reasonably likely in the foreseeable future. Such an action violates the Due Process Clause, as explained in *Zadvydas*." *See Villanueva v. Tate*, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025). Thus, Petitioner should be released. *See Zadvydas*, 533 U.S. at 701.

**Conclusion and Recommendation**

For the reasons discussed above, it is recommended that the Amended Petition for Writ of Habeas Corpus, Dkt. No. 11, be **GRANTED**, and Respondents should be ordered to **RELEASE** Petitioner Safi, subject to the execution of his final order of removal, which the Respondents are free to act upon lawfully and pursuant to the applicable procedures. Moreover, the Court recommends that Safi may be released subject to an Order of Supervision, as may be appropriate under applicable regulations and governing law, although the record here reflects that only minimal conditions would appear appropriate. Indeed, the Court notes that no national-security or safety concerns whatsoever were raised at any time as a basis to require continued detention, and that if such concerns had been properly at issue they would have colored the Court's analysis and conclusions.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this Report and Recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this deadline is modified by the Court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the presiding District Judge's standing orders or other Court order. *See* W.D. Tex.

Local Rule CV-7. The objecting party shall file the objections with the Clerk of the Court and serve the objections on all other parties.

A party is entitled to a *de novo* review by the District Judge of the findings and conclusions contained in this Report and Recommendation, only if specific objections are made. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the default time to file objections from 10 to 14 days). An objecting party must therefore specifically identify those findings, conclusions, or recommendations to which objections are made, as well as the basis for all such objections; the District Judge need not consider frivolous, conclusory, or general objections. *Id*. Failure to timely file written, specific objections to any proposed findings, conclusions, or recommendations contained in this Report and Recommendation will bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the District Judge, except on grounds of plain error, given that the party is here provided notice that such consequences will result from a failure to object. *See* 28 U.S.C. § 636(b)(1)(C); *Douglass*, 79 F.3d at 1417. Finally, facts or legal arguments raised for the first time in objections to a Magistrate Judge's findings, conclusions, and recommendations are "not properly before the district court." *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992); *see also Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 369 (5th Cir. 2024) ("[The Fifth Circuit] considers arguments forfeited if they are not raised before a magistrate judge, even if they are subsequently raised before the reviewing district [judge] in objections to the magistrate judge's report and recommendation.").

**IT IS SO ORDERED**.

**SIGNED** this 14th day of August, 2026.

**RICHARD B. FARRER**
**UNITED STATES MAGISTRATE JUDGE**